Murdock *v.* Gaskill.

W. F. and A. MURDOCK & Co. *et als. v.* H. L. GAS-
KILL, Executrix, *et als.*

1. TRUSTS. *Deeds of trust.* A being largely indebted to various persons,
   conveyed certain lands to B, their attorney, the deed being absolute
   on its face. But the intention was that B was to hold it in trust for
   his clients. *Held,* that he held the lands in trust for them.
2. PLEADING AND PRACTICE. *Demurrer. Res adjudicata.* A decree sus-
   taining or overruling a demurrer, affirmed by the Supreme Court on
   appeal, is final as to the points adjudged in that particular case, and
   may be relied on as *res adjudicata.*

   Cases cited: Jameson *v.* McCoy, 5 Heis., 109; McNairy *v.* Mayor, etc.,
   2 Baxter, 251.

FROM HAMILTON.

Appeal from the Chancery Court. D. M. KEY,.
Chancellor.

NASH H. BURT for complainant.

VANDYKE, COOKE & VANDYKE for defendants.

FREEMAN, J. delivered the opinion of the court.

This bill was dismissed on demurrer in the Chan-
cery Court at Chattanooga, from which decree com-
plainants prayed an appeal to this court. The facts.
alleged in the bill are substantially as follows:

In 1845 one W. N. Anderson, a merchant of Chat-
tanooga, was indebted to a number of mercantile firms
of the city of Baltimore upward of five thousand dol-
lars. These claims were placed in the hands of White-
sides & Brabson, attorneys of Chattanooga, who ob--

tained judgments and had executions issued. Finding that the lands of Anderson would have to be sold for the debts and be purchased by the creditors, subject to redemption, it was agreed that the lands should be taken at valuation agreed on in satisfaction of the judgments, and conveyed to James A. Whitesides, of the above firm. This conveyance was made in order to facilitate a reconveyance of the land on sales, as the creditors were numerous, so that it would have been very inconvenient, probably, to obtain all their signatures and acknowledgment of deeds.

This conveyance was made in September, 1849, as appears by letter of Whitesides & Brabson to Murdock & Co. of that date. From this letter, which is made part of the bill, it appears the purpose of Whitesides was to sell the lands as soon as possible, and thus realize the money for his clients. He tells them "the lands could not then be sold for what they had cost, but we believe they may be sold to good men, say on one and two years' credit, for an average of ten dollars per acre." The bill charges the sale of the various tracts of land, and date of said sales made in 1857; but as to an eighty acre tract, the matter mainly in controversy in this case, it is alleged it was conveyed on the 1st of March, 1849, by said Whitesides to one B. R. Montgomery for the alleged consideration of $800. The bill adds, "complainants charge fraud in this conveyance to Montgomery. Before there was any conveyance there was never any sale in reality, to-wit., on the 6th of October, 1848, said Whitesides, or Montgomery for him,

as complainants believe and charge, sold, and Montgomery conveyed, six acres of said eighty acres to the Nashville & Chattanooga Railroad Company for depot purposes for $2,500 and yet on the 17th of May, 1849, Whitesides advised complainants by letter, that said eighty acres had been sold for only $10 per acre. In another part of the bill it is stated that this eighty acres of land, being nearest to the city of Chattanooga, and therefore of more ready sale, was the last sold, or conveyed rather, implying it may have been sold sooner, though conveyed later.

It is charged as the result from the above facts mainly, that the sale to Montgomery was a mere device by which Whitesides might report the sale of the land at prices allowed Anderson, as given in his letter, and in pursuance of his proposition to sell at that rate, if no instructions were given him to the contrary, and that the sale to Montgomery was only an effort by means of such conveyance for form's sake, to denude himself of his trust that he might afterward repurchase. It is also alleged that Montgomery never paid anything in fact for the land, or if he did it was out of the proceeds of the six acres sold to the railroad. It further appears from the bill that in October, 1850, Montgomery, by deed, conveyed an undivided half interest in this eighty acre tract, included in a tract of about ninety-two acres in the deed, for the alleged consideration of $4,000, excepting out of the eighty acres five acres, upon which Montgomery had placed his residence; that this deed was held by Whitesides and kept among his valuable

papers, but was not registered, or authenticated for registration, until 1870. This registration was long after the death of Whitesides, he having died in 1862, leaving a will, appointing his wife, the present Mrs. Gaskill, executrix.

Without going further at present into the facts of the case, it is evident upon these facts, first, that Whitesides held the legal title of the land as a trustee for the complainants, the trust being shown by his letter before referred to.   Story's Eq., sec. 980. As such trustee he had also a power of sale, and was authorized to sell the land on the terms indicated in his letter, that is, on one and two years' credit, and at ten dollars per acre.   It is clear, however, that the facts alleged show a gross violation of this trust, admitting them to be true, as must be done on demurrer as to the effect of lapse of time, and the other facts shown in the bill of long acquiescence, after notice of the sale to Montgomery, given in May, 1849, as stated, and the other questions of defense presented in the demurrer, we need at present express no opinion, as another question presented on the face of this bill, we think, is conclusive of the result of the case.   While it is not very distinctly shown what was involved in a certain cross bill, alleging to have been filed to a bill filed by W. W. Anderson against these complainants, claiming perhaps that the conveyance to Whitesides was a mortgage, and seeking to redeem, yet, taking all the statements of the bill on this subject, with the history of said bill and cross bill, and the grounds on which it is claimed the de-

cree on the same should not be conclusive of the matters in this, we can only conclude that the complainant shows that the same matters in substance were presented in that as in this bill, and the same was dismissed on demurrer by the chancellor, and his decree affirmed by this court.

In the case of *Jameson, Adm'r,* v. *McCoy,* 5 Heis., 109, we held that a decree or demurrer in a chancery case, affirmed by this court on appeal, was final as to the points thus adjudged in the particular case. This case was followed by us after a reinvestigation in the case of *McNairy* v. *Mayor and City Council of Nashville,* 2 Baxter, 251. We adhere to this view of the question, and feel bound to hold that the decree dismissing that cross bill renders the questions involved *res adjudicata* as to complainants, and excludes them from a reinvestigation of the question. We do not deem it necessary to elaborate this question, or to go into any further discussion of the questions urged in argument before us. The result is, that the decree of the Chancellor must be affirmed with costs.